**KEITH v. BORRON et al.** *

No. 4692.

Court of Appeal of Louisiana. Second Circuit.

Feb. 5, 1934.

Thornton, Gist & Richey, of Alexandria, for appellants.

Frank H. Peterman, of Alexandria, for appellee.

TALIAFERRO, Judge.

Plaintiff brought this suit against Paul G. Borron and his insurer, the Ætna Casualty & Surety Company, to recover a large amount of money for injuries to her and damage to her automobile resulting from a collision between her car and that of Borron, caused by the alleged negligence of the latter. The accident happened on the concrete highway 13 miles south of Alexandria at about 6 o'clock the evening of December 24, 1932. Plaintiff was driving south in her Essex car, and Borron, accompanied by his wife, was en route to Alexandria to spend Christmas with relatives and friends, driving a medium size Marmon sedan, much heavier than the Essex of plaintiff. In plaintiff's car, besides herself, were her husband, eight year old daughter, and a brother. The gravamen of plaintiff's suit and the specified acts of negligence charged to Borron are contained in articles 4 and 7 of her petition, which we quote:

"4. Petitioner shows that on the above occasion she was driving in a careful and prudent manner and was on the right side of the highway in the direction in which she was traveling; that another car, occupied by parties unknown to your petitioner, was approaching from the opposite direction; that behind this latter car was the one driven by the defendant Borron; that the said Borron left his right side of the road driving at a rapid rate of speed, evidently with the intention of passing the car that was ahead of him; that he got beyond the center of the highway and onto the part of the highway on which petitioner was driving; that it became apparent to petitioner that defendant Borron would try to overtake and pass the car ahead of him; that when it appeared to petitioner that the car of the said defendant was headed in the direction of petitioner's automobile, your petitioner pulled as far over to the right as possible, going to the extent of driving the right wheels of her car off of the pavement in order to avoid a collision; that the defendant continued driving rapidly in his course toward petitioner, and just before reaching her he whipped his car back toward his right side of the highway, but not in time to avoid striking petitioner's car; that the rear of the said defendant's car struck the front of petitioner's car, breaking the left front wheel, causing petitioner's car to whirl around into the ditch on the left side of the highway."

"7. Petitioner shows that the injuries and damage which she has suffered as above alleged were due to the negligence of the said defendant Borron; that he was negligent in leaving his side of the road and running into your petitioner; that he was negligent in driving at a rapid rate of speed under the circumstances; that in so doing he violated the laws of the State of Louisiana, as well as the law of the road and the ordinary rules of care and prudence; that if he was attempting to pass the car ahead of him he was negligent in trying to do so when petitioner was approaching so near and from the opposite direction; that by reason of his negligence as above set forth he has caused petitioner damage in the sum above mentioned, and which amount she is entitled to recover from said defendant."

The salient feature of the charge of negligence against Borron, contained in this article, is that in the effort to pass the car ahead of him, he encroached upon plaintiff's side of the highway, going at a rapid rate of speed, toward her car and continued doing so until the collision took place.

Defendants specifically deny all the allegations of the quoted articles, and all other averments of the petition which charge Borron with any negligence or any responsibility for the collision or the consequent results. They specifically charge that the collision was due solely to the fault, negligence, and imprudence of plaintiff in the operation of her own car in the following respects: That she was speeding along in the darkness without headlights burning, as required by law, and that after her car had met and passed a car traveling north and in front of the Borron car, approximately 100 feet, it was suddenly steered to its left, pointing easterly toward the Borron car, and thus confronted with an emergency, he attempted to avert the impending collision by promptly veering his car to his right, but the effort was futile and the collision occurred. Contributory negligence on part of plaintiff is pleaded in the alternative. This negligence it is charged, inter alia, consists of: Operation by plaintiff of her car at an excessive rate of speed and in a reckless manner under the circumstances; and without lights after sundown and dark, in violation of the state law.

In the lower court plaintiff was given judgment, and defendants have appealed.

Questions of fact only are involved in the issues of negligence arising from the pleadings. Both sides support their contentions by testimony of several witnesses. Both cannot possibly be correct. Plaintiff carried the burden of establishing by a clear preponderance of the evidence that the cars collided primarily, through the negligence of the defendant. After a careful study of the testimony of the witnesses, we have reached the conclusion that plaintiff not only has failed to

make out her case, but that a fair preponderance of the testimony is on the side of defendant. In reaching this opinion of the probative effect of the testimony, we are not unmindful of, nor have we overlooked, the well-established rule that on questions of fact the decision of the trial judge, who saw and heard the witnesses testify, is entitled to great weight and should not be disturbed unless manifestly erroneous. In this opinion we shall discuss somewhat in detail the evidence of the witnesses who saw, or claimed to have seen, the movements and positions of the cars immediately prior to and at the time of the collision.

■ The road where the collision occurred is 18 feet wide, with dirt shoulders on each side 4 feet wide. After the accident plaintiff's car rested on the east side of the road, some 45 feet south of the point of impact, in the ditch, with the front pointing easterly or southeasterly. The Marmon car also stopped on the east side of the highway, not over 10 feet from the point of impact, rear end in the ditch, with front bumper on a line, or near line, with the east edge of the pavement. The left front fender, wheel, light, and other parts of the Essex sedan on or about the left side of the front end, were badly damaged, while both of the left doors, the left running board, and left rear fender of the Borron car were severely scarred and injured. This fender was entirely torn loose from the running board and ripped from the body of the car to a point above the center of the wheel. These injuries indicate that the Essex struck the Marmon car with great force.

It is admitted by plaintiff that only the two small parking lights of her car were burning as she was proceeding down the highway at the time of the collision. She justifies the absence of her headlights for the reason, as she says, it was not dark enough to require use of them, and her testimony on this point is corroborated by several witnesses, yet it is established that the sun set at 4:43 the evening of the accident, and we know that darkness, or near darkness, comes on within an hour thereafter, necessitating the use of headlights on cars by every one who is desirous of observing the law and of protecting himself against injury from rapidly moving traffic. In addition to this convincing proof of the fact that it was dark enough, at the time of the accident, for the headlights on automobiles to be of service, we have the testimony of Mr. and Mrs. Borron that the lights on their car had been turned on for several minutes before the collision; the testimony of Mr. and Mrs. Martine, who were driving in the car ahead of Mr. Borron about 75 or 100 feet, that the lights of their car and of the Borron car were then burning; and we also have the testimony of Mr. and Mrs. Todd, who were going north a short distance south of the accident, to the effect that it occurred about 6 o'clock and that their car lights were then on. The skies were overcast with clouds that evening. This atmospheric condition would cause darkness to come earlier than would be the case if the weather were fair.

Therefore, on the question of whether the Borron car, and the Martine car just ahead of it, had their headlights burning when the collision occurred, we have to conclude that they did; and this fact, coupled with the absence of such lights from plaintiff's car, we think, accounts for the sudden and unexpected movements of the Essex car which precipitated the collision. The highway law requires that headlights of moving motor vehicles be turned on one-half hour after sunset. Sections 50, 52, Act No. 296 of 1928.

Plaintiff's version of the accident, its causes, effects, etc., supports the allegations of her petition. She says that she first saw the Borron car at a distance of three blocks (300 yards), or farther, when it suddenly came from behind the Martine car, apparently endeavoring to pass it, but failed to do so; that the Borron car crossed the meridian black line in the road and continued to travel toward her; that when she observed these movements of the car, she began to slow her car down and put the right wheels of it over on the dirt shoulder about 3 feet from the pavement, and that was the position of her car when it was run into by Borron; but, she adds, the Borron car was quickly turned at an angle to its right in an effort to again fall in behind the Martine car, and in doing this its rear swung into and against her car; that the collision took place just as she passed the Martine car; that she was driving not over 35 miles per hour, but the other two cars were going at a rapid rate; and that Borron could not pass the car in front of him. She says that she felt that she was going to have an accident was the reason she got over on the side of the road, and wanted to stop her car, but that she thought the Borron car would resume its side of the road, until it was too late. She is certain none of the cars had lights on.

The testimony of William A. Keith, plaintiff's husband, is virtually the same as hers. He is certain none of the cars had headlights burning, and that it was light enough for him to see the Martine and Borron cars when half a mile from them; that he saw the Borron car come from behind the Martine car, across to plaintiff's side of the road, and race the Martine car, with front end close to it, but on its left-hand side, until it (the Borron car) tried to cross back to its side of the highway, at which time it was only a few feet from plaintiff's car. He stated that Borron's car's lights were not burning until he turned them on after the accident. He was certain the left wheels of the Borron car, when 400 feet away, were on the west edge of the concrete portion of the road,

and probably over on the shoulders. He gave the following pertinent testimony:

"Q. How far up did his car come up to the other car on that side? A. Well, from my position, as it appeared to me, it looked as if the front end of Mr. Borron's car was about at the rear end of the car ahead of him.

"Q. When he got there, you say you think he was about 400 feet up the road? A. It looked that way; I wouldn't say positively.

"Q. Did he stay at about that relative position with the other car until he reached your car? A. Until he was just a few feet of our car."

This evidence is directly contradictory of that given by him wherein he said that defendant's car wheels were possibly over on the dirt shoulders. In view of his testimony quoted above, we are unable to understand how plaintiff's car, over on the shoulder, could have been struck by the Borron car which followed the car ahead of it closely, and every witness concedes the forward car was at all times well on its proper side of the highway.

Harry G. Owen, a witness for plaintiff, says he was half a mile south of the accident, riding on the front seat of a car, the operator of which he did not know, and saw all the details of the collision. He says Borron's car passed the car in which he was riding a mile or more south of the site of the accident, going at a rapid rate of speed; that when Borron was some 50 yards from plaintiff's car, he pulled his car to about the middle of the road, apparently trying to pass the car ahead of him, and continued along this course until he tried to swing the car back to his right in the effort to avert collision with plaintiff's car; that "when he swung the front end of his car to his right, the rear end naturally went *across the line towards the other way;* it looked like it was facing more across the highway than it was up and down." The car in which this witness was riding passed by the scene of the accident, a short distance, and was turned around and driven back to the scene. He states that he got out of the car for a minute or so and observed that there was a car track on the west shoulder of the road, for 30 or 40 feet, corresponding to the course plaintiff and other witnesses say plaintiff's car took when off the pavement before the collision, and that he then went over to plaintiff's car in the ditch on the opposite side of the highway and, while several feet distant from the rear wheels, was able to detect the casing tread was of the same design and finish as was impressed in the tracks on the road shoulder. He further says that he saw signs on the grass on the shoulder indicating that the car wheel had slid sideways

when hit; "the grass was all mashed down," he says.

At this juncture we might say that Mrs. Keith testified that her car ran off of and along the side of the pavement 87 feet, before the collision; that there was no grass on the road's shoulder, only mud; and that Borron came from behind the Martine car when at least 300 yards away from her. There is direct contradiction between plaintiff and Owen on these material points.

After Owen had completed his inspection of the locus, Mrs. Keith was taken in the car in which he was riding and carried to Lecompte, 2 miles south, for medical attention. He never knew the Keith family prior to this time, but thereafter evinced an unusual and unnatural interest in their behalf in the prosecution of this case. We have serious doubt of this witness having seen the collision of the cars. If he was one-half a mile away, and he says he was, at the time of day when the accident occurred, he could not have discerned objects the size of a car that far away.

Tillman Marshall, another witness for plaintiff, says he was driving his car behind that of plaintiff at a distance of from 50 to 75 yards, and observed the movements of both cars immediately before and at the time of the collision; that he never saw Borron's car until it tried to get ahead of the Martine car; that Mrs. Keith drew her car to her right side off of the pavement as far as she could get it, and slowed it down; that when Borron saw he could not pass the car ahead of him, he undertook to return to his right side of the road and at this juncture the collision occurred; that one-half of the Borron car was across the black line before he attempted to get over on his right side; and that when the collision happened, the left rear wheel of his car was only one foot over the line. He also says that the Borron car, "between the middle and rear," struck the Keith car. If this witness' testimony is true, it is obvious there would have been no collision between these cars, and no lawsuit to be brought and tried. If plaintiff's car was halfway over on the dirt shoulder and defendant's left rear wheel was only across the black line one foot, then there were some 4 or 5 feet clear space between the two cars as they passed. This witness admits he is a close friend to members of the Keith family. He, like plaintiff, had a premonition that there would be an accident as soon as he saw Borron's car try to pass the Martine car.

Philo Patterson, testifying for plaintiff, said he was walking southerly on the track of the Rock Island Railroad nearly opposite to and about 85 yards west of the site of the accident, and saw it. He says plaintiff's car had just passed him as the collision hap-

pened; that the car was over on the shoulder at the time, moving very slowly. He, like Owen and Marshall, states that defendant's car was not at any time entirely over on the west side of the concrete part of the highway; in fact, he says it did not get over on this side of the black line more than 2 or 3 feet. The collision and following excitement and gathering of people on the scene did not interest him sufficiently to leave the railway track and walk over to the scene. He learned the identity of those in the accident at Lecompte the following morning, and then walked to plaintiff's home, several miles away, to inform them that he had seen the collision.

Mr. Borron's version of the accident is as follows:

"Well, I was driving along the Jefferson Highway at a moderate rate of speed, following another car which was preceding me, I would say, approximately 75 feet, for some little distance before the accident; I don't know or remember exactly how far down the road that I noticed this car that was preceding me; it had its lights on, and I had my lights on my car; my car has very bright lights and I had turned my lights on somewhere between Cheneyville and Lecompte; the lights were on in Lecompte as we passed through, and after we had passed Lamourie, there's a bridge there I believe, I remember crossing a bridge about three-quarters of a mile and as I was following this car a car very suddenly came out from the side of the car that was preceding me and as it came by the car that was preceding me, it cut to an angle in my direction; I would say I was traveling at that time with my left wheels near that center mark in the road; I say that because I customarily travel along those paved roads in that way, and I notice that practically everybody else does; the reason that is is to give you some protection in case of a blow out, so you wouldn't go into a ditch before you stopped the car. This car, as it came by the car that was preceding me, there wasn't anything for me to do, I cut my wheels in as quick as I could and put on my brakes at the same time and I think my car was practically—well, it was going at a very slow rate and practically stopped, when I was struck. I don't say that from actual knowledge but from the fact that my car went only about five feet after the impact; the glass in the road was about five or six feet south of the head in of my car when I got out of my car; now, that impact hit my car first a glancing lick near the front door on the side I was sitting on and it just threw the rear end of my car in a half-circle to the right and off of the cement road, whether it landed beyond the shoulder of the road or just on the edge of the shoulder, I don't know, and then it eased down in the ditch leaving the car standing at about like my pencil there, right angles with the road, with the lights up in the air; this other car continued by me and went into the ditch about 45 feet beyond my car on the same side of the road and headed with the head of it practically east."

He states positively the headlights of his car had been turned on for at least 10 minutes before the collision, and that practically all the cars passing at the time had their lights burning. He denies positively that he at any time endeavored to pass the Martine car, and is certain he was on his side of the black line when run into by the Keith car. He could not account for the action of the Keith car in leaving its side of the road and heading diagonally into his car, unless Mrs. Keith, running without lights, was blinded by the lights of the Martine car, and lost sense of direction. Mrs. Borron was riding beside defendant when the accident happened. Her evidence corroborates his in material detail.

W. P. Martine and wife testified as witnesses for defendant. He says that he stopped his car and looked at his watch when he heard the crash of the cars' impact behind him, and it was exactly 6 o'clock. He is a railroad engineer by profession and had followed that vocation for 33 years. He states he was traveling 30 miles per hour and that the Borron car had trailed him for several miles, keeping along 75 feet from his car; that he recognized plaintiff's car first when it was half a block away, when his car lights fell on it; that the approaching car had no lights burning, and passed so close to his own left rear fender that he became excited and his wife exclaimed, "Watch out, there's an antomobile coming," and within a second he heard the crash of the colliding cars a short distance behind him; that he brought his car to a stop for a few seconds, looked back and saw the Borron car in the ditch, and not wishing to be a witness in court about the matter, proceeded up the road.

Mrs. Martine's testimony in substance is the same as that of her husband. She says: "It (the Keith car) turned in by my car and the next thing I heard was the accident." She became so nervous and excited that she asked Mr. Martine to take her home. She saw no lights on the Keith car and, like Mr. Martine, is positive it was entirely on the pavement as it passed them, and turned angling in behind their car. She was asked a question, to which she replied: "Well, I don't know why she made the turn, but I know she turned in toward my car."

Plaintiff sought to prove by several witnesses that car tracks on the west shoulder of the road at the site of the accident, the morning following it, were identified as being made by her own car, but we attach no importance to this evidence, because it is shown that while the wrecker from Alexandria was at length across the highway pulling the Borron car out of the ditch that night, several

cars passed the spot and had to put their wheels over on this shoulder in order to get by; and other cars ran off the pavement there immediately after collision, because for a short while there was a congestion in traffic about the place. The same may be said of the testimony tending to show skid marks on the pavement. The movements of the wreckers and other cars passing the scene made it impossible to identify with any degree of certainty the tracks of any particular car.

If the right wheels of plaintiff's car were 3 feet over on the dirt shoulder of the road, as she and her witnesses say, then the left wheels of the car were not more than 3 feet over on the pavement; in other words, the car was about half on and half off of the pavement. Therefore, there was 6 feet clearance between this car and the center line in the road. According to the testimony of plaintiff's witnesses Owen, Marshall, and Patterson, defendant's car was near the center of the highway when approaching plaintiff's car, and never at any time got as far as 6 feet west of the black line in the center of the concrete. Owen says that the Borron car was astride the black line, half on each side at the time of the collision; Marshall says the Borron car was halfway over the line trying to pass the car ahead of it; and Patterson, who, we do not think, was in a position to see all he says he saw, states that the Borron car was only across the line 2 or 3 feet when the collision occurred. Giving to this testimony its face value, there could have been no contact between the cars if plaintiff's had been where she and her three witnesses said it was when the collision happened.

We think that when the material physical facts of this case are studied, and the laws of physics pertinent thereto are applied, the version of this accident as related by plaintiff and her witnesses will be clearly shown to be incorrect, and that defendant's version thereof will be demonstrated as true.

Defendant's car was at least 16 feet long. The first points of injury thereto were in the center of the lower section of the left front door (that part covered by metal) and to the edge of the top cover, immediately above the top of the door, along the metal water drip. The nature and location of these injuries indicate that the fender of the Essex struck the front door of the Marmon car, and that the front edge of the top of the Essex did the damage to the top of the Marmon car. Other injuries to the left side of the Marmon car, its running board, and left rear fender, indicate quite clearly that the Essex, from first points of contact, continued to scrape and ram the Marmon car until it (the Essex) broke loose from the Marmon and headed diagonally (southeasterly) across the highway. The fact that the Essex, the lighter car, after the impact, traveled, in a crippled condition, 45 feet into the ditch, and that the front end of the Marmon, the heavier car, only moved from 8 to 10 feet after the impact, without further comment, impresses us with the incorrectness of the contention that plaintiff's car was traveling very slowly when the collision occurred; but on the other hand, is confirmatory of the evidence of Mr. and Mrs. Borron to the effect that their car was not speeding, but was going at a moderate rate of speed, and that he applied his brakes in an effort to stop his car as soon as he realized plaintiff's car was headed into his. There is still another phase of this line of evidence which utterly refutes plaintiff's position. If plaintiff's car's right wheels were off the pavement 3 feet when the accident happened, then it is certain that the left front door of defendant's car, when rammed, was no farther over on the pavement than was the left fender of the Essex car, or some 3 feet. Therefore, about the rear half of defendant's car would have extended diagonally across the line of travel of the Essex car, necessarily projecting itself over on the shoulder. No one contends this was the situation. Had the impact occurred when the cars were in this position, when defendant's car was moving rapidly and plaintiff's slowly, we cannot conceive that the Essex car could have taken any other course than off the shoulder on its side of the road. The superior weight of the Marmon car in conjunction with its rapid rate of speed would have forced this movement of the Essex car.

The location of the damage done defendant's car shows it was hit an angling blow. The nature of the damage certainly argues convincingly that the blow was delivered with great force and violence, such as only could be inflicted by a rapidly moving heavy object, and the position of the car after the collision establishes beyond question that the blow was of sufficient force to cause the Borron car to describe a circular movement to the right, with the front end as a near pivot. The fact that the broken glass from both cars was found about the center of the road indicates that both cars were on the pavement when the collision occurred.

This accident could not have happened in the manner plaintiff says it did. It could have happened, and we think it did happen, in the manner defendants say it did. The only plausible theory of it, it seems to us, is that advanced by Mr. Borron, viz., that plaintiff was traveling without lights after dark and lost her sense of direction when meeting the Martine and Borron cars, both of which were burning bright lights.

Mr. Borron has nothing at stake in the case. He is amply protected by insurance. There is no reason whatever why he or Mrs. Borron should to the least extent wish to present the facts of this case to the court in any other light than the true light; and the same can be said of Mr. and Mrs. Martine. The explanation by all four of these parties as to

how the collision occurred has all the earmarks of truth and reason, and jibes with human experience under such circumstances. It is suggested that no reason whatever can be assigned for Mrs. Keith quitting her side of the road and running into the Borron car. Our theory of her movements in this respect has already been stated. It may be equally said that no good reason appears why Borron should not have succeeded in getting ahead of the Martine car, moving at 30 miles per hour, long before he met plaintiff's car, in view of plaintiff's evidence that Borron began the effort to forge ahead of the Martine car over 300 yards away.

For the reasons herein assigned, the judgment of the lower court is reversed, annulled, and set aside; and there is now judgment in favor of defendants, dismissing plaintiff's suit and rejecting her demands at her cost.